MARYLAND DEPARTMENT OF HU-
MAN RESOURCES and Ruth Massin-
ga, Secretary and Linda Walter and
(Individually and on Behalf of All Oth-
ers Similarly Situated)

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE and John R.
Block, Secretary.

Civ. No. HM85-2734.

United States District Court,
D. Maryland.

Aug. 2, 1985.

Stephen H. Sachs, Atty. Gen. of Md.,
Nancy B. Shuger, Mark J. Davis, Ralph S.
Tyler, Asst. Attys. Gen., Baltimore, Md.,
for State plaintiffs.

Peter M.D. Martin, Dennis W. Carroll,
Stuart R. Cohen, Legal Aid Bureau, Inc.,
Baltimore, Md., for Recipient plaintiffs.

Surell Brady, Renee M. Wohlenhaus, Tri-
al Attys., Dept. of Justice, Washington,
D.C., Juliet A. Eurich, Asst. U.S. Atty.,
Dist. of Md., Baltimore, Md., Debra Byers,
Elizabeth Allaben, Patrick Gardner, Office
of Gen. Counsel, Dept. of Agriculture,
Washington, D.C., for defendant.

MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Plaintiffs Maryland Department of Hu-
man Resources and Ruth Massinga, Secre-
tary, and Linda Walter, individually and on
behalf of all others similarly situated, filed
the instant action against defendants Unit-
ed States Department of Agriculture and
John R. Block, Secretary, on June 25, 1985.
The Verified Complaint for Preliminary and
Permanent Injunctive and Declaratory Re-
lief charges that "[d]efendants' decision to
deny Maryland's request to exclude from
food stamp income payments designated by
the State legislature for energy assistance
is arbitrary, capricious and not in accord-
ance with law because the decision violates
the terms of defendants' own regulations, 7
C.F.R. § 273.9(c)(11)(i) (A)–(E), and the stat-
ute governing the Food Stamp Program, 7
U.S.C. § 2014(d)(11). *See* 5 U.S.C.
§ 706(2)(A). Under this statutory scheme,

a State which documents that energy assistance is for the purpose of meeting the home energy needs of public assistance recipients is entitled to exclude these payments from food stamp income. It was unlawful for defendants to deny Maryland the opportunity to assist the State's food stamp recipients in the manner allowed by governing law." Complaint, paragraph 43 at pp. 13–14. As relief, plaintiffs request the following:

"1. That the court determine as soon as practicable that this action be maintained as a class action under F.R.Civ.P., 23(b)(2).

2. That the court issue a declaratory judgment granting Maryland permission to exclude from income in calculating the Food Stamp allotments of the recipient plaintiff and the class she seeks to represent, the public assistance grant increase designated by the General Assembly of Maryland for energy assistance, effective July 1, 1985.

3. That the court issue a preliminary and permanent injunction prohibiting defendants, pursuant to their illegal decision, from imposing any fiscal sanctions or other penalties upon Maryland or from otherwise reducing any funds for administrative costs, which normally would be paid to Maryland in the usual course of defendants' financial participation in Maryland's Food Stamp Program.

4. That, during the pendency of these proceedings, the court issue such interim orders as may be necessary to prevent defendants from imposing fiscal sanctions or other penalties upon Maryland or from otherwise reducing funds for administrative costs which normally would be paid to Maryland in the usual course of defendants' financial participation in the State's Food Stamp Program;

5. That the court issue a permanent injunction preventing defendants, pursuant to their illegal decision, from prohibiting Maryland from implementing a policy which excludes from the food stamp income of the individual plaintiff and the class she seeks to represent, the grant increase that the General Assembly of Maryland authorized such recipients to receive, beginning in July 1985, for energy assistance.

6. That the court retain jurisdiction to grant such other relief, including fees and costs, as is fair and just." Complaint, pp. 14–15.

The State Plaintiffs' Motion for Preliminary Injunction is now before the court. *See* F.R.Civ.P. 65(a). The court held a hearing on the pending motion on Wednesday, July 31, 1984. Having considered the oral as well as the written evidence submitted by both parties, the court is now prepared to rule.

In support of their motion for preliminary injunction, plaintiffs Maryland Department of Human Resources and Ruth Massinga [hereinafter State plaintiffs] contend that the balance-of-hardship weighs in their favor. Specifically, the State plaintiffs contend that they will suffer irreparable injury if they cannot continue implementing an exclusion policy free from fiscal sanctions and penalties. They argue that the likelihood of irreparable harm to the plaintiffs without an injunction is greater than the likelihood of harm to the defendants with an injunction. Moreover, State plaintiffs argue that they are likely to succeed on the merits because the defendants' decision to deny plaintiffs' exclusion request was arbitrary and capricious. Finally, State plaintiffs argue that the public interest weighs in favor of granting preliminary relief. State plaintiffs therefore request the court to enter a preliminary injunction to preserve the *status quo* because they face irreparable injury without such relief beginning August 1, 1985 until the merits are determined for following an exclusion policy without defendants' approval and without freedom from fiscal sanctions and administrative penalties.

The class of recipients of both AFDC welfare and Food Stamp benefits also have filed a memorandum in support of the State plaintiffs' Motion for Preliminary Injunction. The recipient plaintiffs argue

that the State plaintiffs' motion should be granted because denial of such motion would result in the reduction of food stamp benefits for approximately 180,000 Maryland residents, and any loss of food stamps would cause great hardships to recipient families and individuals and interfere with their ability to subsist. In addition, recipient plaintiffs also claim that the State plaintiffs' probability of success on the merits is very likely given that the objective facts and legislative materials indicate that the Maryland legislature passed the July 1985 increase as a direct result of evidence of the high cost of energy in Maryland and not as a sham. Recipient plaintiffs therefore request the court to grant the preliminary injunction.

In opposition to State plaintiffs' Motion for Preliminary Injunction, defendants argue that "[t]he preliminary injunction requested by Maryland may not be entered in this case, however, because the Food Stamp Act, 7 U.S.C. § 2020(g) precludes such relief. Second, the State of Maryland has altered the status quo without authority, in fact with the Secretary's specific disapproval, the status quo to be protected here is the status before Maryland implemented a disapproved charge in calculation of food stamp households' income. In such circumstance, equity precluded the Court from granting Maryland's motion. Third, the elements of the preliminary injunction test have not been met by Maryland in this case"; that is, the preliminary injunction requested would disrupt and not preserve the status quo, Maryland has shown no irreparable injury, Maryland has little likelihood of success on the merits, and the public interest favors denial of the preliminary injunction. Defendants therefore request that plaintiffs' motion for preliminary injunction be denied.

Before analyzing the law applicable to the case at bar, the court will first examine the facts giving rise to the instant action.

## A. FACTUAL BACKGROUND

Plaintiffs Maryland Department of Human Resources (DHR) and Secretary Massinga have submitted Proposed Findings of Fact and Conclusions of Law in the instant case. The court has reviewed all the evidence submitted and believes that plaintiffs' Proposed Findings of Fact adequately and fairly represent the facts in this case. The court, therefore, has determined to adopt plaintiffs' Proposed Findings of Fact with few exceptions. The court's factual findings are thus set forth below adopting plaintiffs' Proposed Findings of Fact.

1. Plaintiffs Maryland Department of Human Resources (DHR) and Secretary Ruth Massinga administer the Food Stamp Program in Maryland.

2. Defendants United States Department of Agriculture (USDA) and Secretary John R. Block administer the Food Stamp Program nationwide.

3. The State plaintiffs participate in the State-Federal Food Stamp Program and are reimbursed by defendants for 50% of the State's administrative costs in operating the program. Defendants pay 100% of benefits for program recipients.

4. The facts which gave rise to this suit are as follows:

a. In its 1985 session, the General Assembly of Maryland enacted a budget bill which was signed into law by the Governor. Section 33.09.00.01 of the bill is a grant increase of $17 million for persons receiving Aid to Families with Dependent Children (AFDC) and General Public Assistance (GPA) effective in State Fiscal Year 1986, which began July 1, 1985. The bill specifically states that the General Assembly passed this grant increase for the purpose of helping public assistance recipients in Maryland to meet their home heating needs.

b. Consistent with this legislative mandate to implement the energy grant increase by July 1, 1985, the State plaintiffs determined that the most administratively efficient manner to accomplish this purpose in accordance with applicable law was to begin to pay the energy assistance grant increase to public assistance recipients ef-

fectively July 1, 1985. Affidavit of Ruth Massinga, ¶ 2.

c. On April 17, 1985, plaintiff Massinga submitted a written request, with supporting documentation, to defendants for permission to exclude, beginning July 1, 1985, from income in the Food Stamp Program the grant increase designated by the Maryland legislature for energy assistance payments. Plaintiff Massinga requested a determination by defendants by May 15, 1985, because of the preparation time necessary to implement an exclusion policy on July 1, 1985, the effective date of the grant increase. *See* Exhibit A to Complaint.

d. On May 24, 1985, more than thirty days after plaintiffs' request, defendants notified plaintiff Massinga of their decision denying her request pending receipt of additional information. *See* Exhibit B to Complaint.

e. On June 3, 1985, Secretary Massinga requested defendants to reconsider their decision and to allow Maryland to implement an exclusion policy on July 1, 1985. Using current data, Maryland's request for reconsideration documented that the energy assistance grant enacted by the 1985 General Assembly of Maryland would meet only 67% of the unmet need in home heating costs of a family of three over a twelve-month period. *See* Exhibit C to Complaint.

f. On June 17, 1985, plaintiff Massinga received notification of defendants' final administrative decision of June 12, 1985, denying her request for reconsideration and stating that defendants' policy was to require Maryland to include the energy assistance grant in food stamp income. *See* Exhibit D to Complaint.

5. On June 25, 1985, plaintiffs filed the within action. It is a timely challenge to defendants' inclusion policy.

6. Maryland's normal administrative practices for implementing an exclusion policy are as follows:

a. For State Fiscal Years (SFY) 1983 and SFY 1985, Maryland's requests to defendants for approval to implement an exclusion policy were promptly approved by them in advance of the July 1 date that Maryland's grant increases became effective in those fiscal years. *See* Exhibits E and F to Complaint.

b. Maryland's SFY 1986 request which was denied by defendants was accompanied by quantitative data similar to that submitted to defendants when the State's requests to follow an exclusion policy for SFY 1983 and 1985 were approved. *Compare* Exhibits A and C to Complaint *with* Exhibits E and F to Complaint.

c. For SFY 1983 and 1985, Maryland's normal administrative practice was to take reasonable steps in advance of July 1 to prepare for implementation of an exclusion policy effective that date. *See* Exhibits E and F to Complaint.

d. For SFY 1986, Maryland followed its normal administrative practice and began to take reasonable steps necessary for implementation of an exclusion policy to become effective July 1, 1985. Affidavit of Ruth Massinga, ¶ 2; *see also* Affidavit of Mark Friedman, ¶ 5.

e. By June 25, 1985, the date the within action was filed, Maryland was prepared to continue its past administrative practice to pay food stamp recipients their full level of benefits and to exclude the energy assistance grant increase from income when determining eligibility and benefit level in the State's Food Stamp Program. Affidavit of Ruth Massinga, ¶ 4.

7. Defendants have represented to this court that they will not take any action against the State plaintiffs, now or in the future, for their decision to exclude as income in their Food Stamp Program for the month of July 1985, the increases in energy assistance payments enacted by the General Assembly of Maryland.

8. Therefore, the issue at this stage is a narrow one: whether defendants' decision to refuse Maryland permission to follow an exclusion policy from the period beginning August 1, 1985, until the merits are determined, free from fiscal sanctions and penalties, now and in the future, will subject the State plaintiffs to irreparable injury suffi-

cient to entitle them to a preliminary injunction to preserve the *status quo.*

9. The State plaintiffs' position is that they will suffer irreparable injury if they are not allowed to continue to follow an exclusion policy free from fiscal sanctions and penalties, now and in the future.

10. Defendants' position is that they do not oppose issuance of a preliminary injunction, provided that any such relief preserves their right to seek fiscal sanctions and administrative penalties retroactive to the period from August 1, 1985, until this case is decided on the merits, if they should ultimately prevail.

11. If the State plaintiffs continue to use an exclusion policy without defendants' approval, and without freedom from sanctions, they will be in non-compliance with federal food stamp program plan requirements. As a penalty for such non-compliance, defendants may seek to withhold future federal financial participation in the administrative costs of the State's Food Stamp Program. For federal fiscal year 1985 (October 1, 1984 through September 30, 1985), defendants' financial participation in the administrative costs of the State plaintiffs' Food Stamp Program is $19 million. Affidavit of Mark Friedman, ¶ 10. Non-compliance by the State plaintiffs will jeopardize their continued receipt of all or part of these federal funds. Affidavit of Mark Friedman, ¶ 7; *see also* Affidavit of Ruth Massinga, ¶ 6.

12. At the same time, the State plaintiffs will face severe fiscal sanctions for their non-compliance. This is so because, in the calculation of each and every food stamp case, exclusion of the energy assistance grant from income will cause defendants to deem the case a payment error. If Maryland continues to follow an exclusion policy for two months, the amount of the fiscal sanction which could be imposed would be $990,000. If Maryland continues to follow an exclusion policy for one year, the amount of the fiscal sanction would be $3 million. Affidavit of Mark Friedman, ¶ 13; *see also* Affidavit of Ruth Massinga, ¶ 6.

13. Defendants' refusal to allow the State plaintiffs to implement an exclusion policy will result in a monthly loss of $425,-000, or an annual loss of $5,100,000 in food stamp benefits for residents of the State of Maryland. Affidavit of Mark Friedman, ¶ 14; *see also* Affidavit of Ruth Massinga, ¶ 6. On behalf of its citizens who are recipients of food stamps and public assistance, the State of Maryland has standing as *parens patriae* to challenge defendants' inclusion policy.

14. Defendants' inclusion policy means that $5.1 million of the $17 million energy grant increase enacted by the General Assembly will be saved by defendants rather than spent on the State's public assistance recipients.

15. The injunction sought would require defendants to permit the State plaintiffs to exclude the energy grant increase from income when determining eligibility and benefit level in the State's Food Stamp Program. Defendants would be unable to impose fiscal sanctions for non-compliance or to count as payment errors every food stamp case in which the energy grant increase is excluded from income. An injunction would prevent defendants from reducing food stamp benefits by the $425,000 per month which defendants would otherwise not have to pay to beneficiaries in the State's Food Stamp Program.

### B. CONCLUSIONS OF LAW

Before analyzing the legal standard applicable to plaintiffs' motion for preliminary injunction, the court will address the legal principles pertinent to the case at bar. The following conclusions of law indicate the legal foundation on which this case is premised and provide a sufficient background for the court's analysis *infra.* The following conclusions of law were submitted by plaintiffs herein and will be adopted by the court in pertinent part.

1. The Food Stamp Program is a cooperative State-Federal program in which the federal government issues food stamps to the states. 7 U.S.C. § 2011 *et seq.* Each

state in turn distributes the stamps to eligible households. 7 U.S.C. §§ 2013–16.

2. The federal government reimburses the state for 50% of the state's administrative costs and pays 100% of benefits for program recipients. 7 U.S.C. § 2025(a). Payment is made by a state's withdrawing funds directly from the United States Treasury under a Letter of Credit authorization. 7 C.F.R., § 277.5 (1980).

3. In consideration of this partial reimbursement by the federal government, a state participating in the food stamp program agrees to meet reporting requirements established by USDA. 7 U.S.C. § 2025(d)(4). A state must submit to USDA quarterly expenditure reports of its administrative costs. 7 C.F.R., § 277.11(c) (1980).

4. A household's entitlement to food stamps and the amount received are based on the household's income. 7 C.F.R., Part 273. The lower a household's income the more food stamps it receives. A state is required to exclude as income when determining eligibility and benefit level in its Food Stamp Program any payments made under any state law for the purpose of providing energy assistance, which are designated by the state legislature as energy assistance, and which are determined by USDA to be calculated as provided on a seasonal basis. 7 U.S.C. § 2014(d)(11).

5. On April 19, 1983, USDA promulgated a rule to determine whether state energy assistance payments should be excluded from income in determining eligibility and benefit level in a state's food stamp program. 7 C.F.R. § 273.9(c)(11). The state agency must submit documentation to USDA to show that its energy assistance payments may be excluded. The state agency must show, *inter alia,* that its payments are made for the purpose of providing energy assistance to households. Section 273.9(c)(11)(i). USDA has adopted five "indicators of purpose" to determine whether or not state assistance to be excluded is actually for the specific purpose of helping households pay home energy costs. Section 273.9(c)(11)(i)(A)–(E). If a

state plan meets three of the five "indicators of purpose", it will probably be approved for exclusion. 48 Fed.Reg. 16828 (Apr. 19, 1983) (preamble to final rule amending 7 C.F.R. § 273.9(c)(11) ). USDA policy is to respond to requests to exclude energy assistance payments from food stamp income within thirty days. 48 Fed. Reg. 16829.

6. If a state were to implement an exclusion policy without prior approval by USDA, USDA could reduce the amount due a state for the federal share of the state's administrative costs for its food stamp program. 7 U.S.C. § 2022(a) and § 2023(a); 7 C.F.R. § 27.4 (1984). Reduction would be by offset from a state's letter of credit. 7 C.F.R. § 277.16(c) (1984). USDA could also withhold future federal financial participation from a state's food stamp program. 7 U.S.C. § 2020(g).

7. A state's implementation of an exclusion policy without USDA approval would be deemed an error by USDA in the calculation of every food stamp case. Such federally deemed errors would increase a state's food stamp rate. If the rate were to exceed USDA's tolerance levels, a state could be subject to fiscal sanctions by additional reduction in the federally funded share of administrative costs for the program. 7 U.S.C. § 2025(d); 7 C.F.R. § 275.-25 (1984). Reduction would be by offset to the state's letter of credit, by direct billing or by other mechanisms authorized under the Federal Claims Collection Act. · 7 C.F.R. § 275.25(d)(4) (1984).

8. Section 33.09.00.01 of the budget bill enacted by the General Assembly of Maryland in 1985 is a $17 million grant increase for persons receiving Aid to Families with Dependent Children (AFDC) and General Public Assistance (GPA). The grant increase is to be effective in the State Fiscal Year 1986, which began July 1, 1985. The General Assembly of Maryland passed this energy grant increase for the express purpose of providing energy assistance payments to public assistance recipients in the State of Maryland to help them meet their home heating needs. The energy grant

increase is to be paid effective July 1, 1985. Consistent with this legislative intent, the State plaintiffs decided to pay the energy grant increase to Maryland's public assistance recipients beginning on this date.

■ 9. On behalf of its citizens who are recipients of food stamps and public assistance, the State plaintiffs have standing as *parens patriae* to challenge defendants' policy to require the State plaintiffs to include the energy grant increase enacted by the General Assembly of Maryland in income when determining eligibility and benefit level in the State's Food Stamp Program.

10. State plaintiffs have asked defendants to allow them to implement an exclusion policy and defendants have declined to do so.

## C. APPLICABLE LAW

The Fourth Circuit's standards for issuing preliminary injunctions under Rule 65(a) of the Federal Rules of Civil Procedure are outlined in *North Carolina State Ports v. Dart Containerline*, 592 F.2d 749, 750 (4th Cir.1979) and *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195–97 (4th Cir.1977). The Court of Appeals applies a balance-of-hardship test. The four factors considered under the test are:

1) plaintiff's likelihood of success in the underlying dispute between the parties;
2) whether plaintiff will suffer irreparable injury if interim relief is denied;
3) the injury to defendant if an injunction is issued; and
4) the public interest.

*North Carolina*, 592 F.2d at 750. In discussing the interrelationship of these factors, the court said:

There is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction. Of all the factors, the two most important are those of probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is issued. If, upon weighing them, the balance is struck in favor of plaintiff, a preliminary injunction should issue if, at least, grave or serious questions are presented. *Id.*

### 1. *The Balance of the Harm*

■ As previously stated, the Fourth Circuit regards the possibility of irreparable injury to be the most important of the factors the court must consider in deciding whether to grant a motion for preliminary injunction. The court believes that the State plaintiffs have sufficiently shown a greater likelihood of irreparable harm to the plaintiffs without a preliminary injunction than the harm to the defendants with an injunction. Notably, the staggering fiscal sanctions and administrative penalties to which the plaintiffs would be subject absent a preliminary injunction cannot be ignored. The court recognizes that monetary injury is not normally considered irreparable; however, the court believes that more is at stake in this case. Significantly, if a preliminary injunction is not granted, the public assistance recipients in the State of Maryland who receive food stamps, whom the State represents in a *parens patriae* capacity, would have their food stamp benefits reduced. Recipient Plaintiffs' Memorandum in Support of State Plaintiffs' Motion for Preliminary Injunction, p. 2. Given the financial status of these recipients, the court believes that any reduction in their food stamp benefits could irreparably injure their daily subsistence. Moreover, the court also believes that, absent a preliminary injunction, the threatened sanctions would impinge on the State's ability to "budget for and manage the Food Stamp program." Supplemental Memorandum in Support of State Plaintiffs' Motion for Preliminary Injunction, p. 5. Balancing this potential harm to the plaintiffs absent a preliminary injunction

against requiring the defendants to hold plaintiffs harmless during the litigation, the court believes that the balance-of-hardship tips in favor of the plaintiffs.

Having found that the balance of the harm tips in favor of the plaintiffs, the court believes that State plaintiffs have presented "grave or serious" questions. *See North Carolina,* 592 F.2d at 750. Specifically, plaintiffs have presented grave and serious questions as to whether defendants' decision to include the energy grant increase in income is legal; whether plaintiffs should be subject to the imposition of significant fiscal sanctions; whether defendants' decision was arbitrary, capricious and in violation of both the statute governing the Food Stamp Program. 7 U.S.C. § 2014(d)(11), and the terms of defendants' regulations implementing this statutory provision, 7 C.F.R. § 273.-9(c)(11)(i)(A)–(E); whether plaintiffs are entitled to exclude the energy assistance payments from income; whether defendants' decision was based on a consideration of the relevant factors set forth in defendants' regulation, 7 C.F.R. § 273.-9(c)(11)(i)(A)–(E) and the documentary evidence submitted; and whether defendants articulated a rational basis for their action. In light of the gravity of these questions and plaintiffs' demonstration of irreparable injury, the court believes that a preliminary injunction is warranted in this case to preserve the *status quo.*[1]

2. *Likelihood of Success on the Merits*

The Fourth Circuit has stated:

The first step in determining whether interlocutory injunctive relief should issue is for the court to balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction. If a decided imbalance of hardship should appear in plaintiff's favor, it is enough that grave or serious questions are presented; plaintiff need not show a likelihood of success on the merits. The need for plaintiff to show likelihood of success on the merits increases as the probability of irreparable injury to plaintiff without an injunction decreases. Finally, the court should consider wherein lies the public interest, sometimes described as preserving the *status quo ante litem* until the merits of a serious controversy can be fully considered by a trial court.

*Maryland Undercoating Co. v. Payne,* 603 F.2d 477, 481 (4th Cir.1979). In light of the court's finding that the balance of the harm tips in favor of the plaintiffs and that plaintiffs have presented grave or serious questions on the merits, plaintiffs "need not show a likelihood of success on the merits." *Id.* Nevertheless, the court believes that plaintiffs have sufficiently demonstrated that they have some chance of prevailing on the merits. Plaintiffs argue that the USDA's decision was arbitrary and capricious because it ignored the evidence presented by the State, because it departs from agency policy of deciding requests for exclusion by applying the five indicators of purpose, and because, initially, it failed to consider the relevant factors. *See* Memorandum of Plaintiffs in Support of Motion for Preliminary Injunction, pp. 13–22. The court recognizes that it may not substitute its judgment for that of the agency; however, upon consideration of the relevant factors, the court believes that this case fits within those in which the basis of the agency's decision is reviewable and, possi-

---

**1.** The court believes that the *status quo* in this action is the State's normal administrative practices followed in the two prior years; that is, the State's practice of taking advance steps to implement an exclusion policy on July 1, 1985 and paying food stamp recipients their full level of benefits. These practices were initiated prior to the commencement of this litigation and were known to defendants. *See* Affidavit of Ruth Massinga, attached to Supplemental Memorandum in Support of State Plaintiffs' Motion for Preliminary Injunction, ¶ 2; Exhibit A to Complaint. The court believes that the State's practice itself is not contested; what is contested is whether the energy assistance grant is related to energy costs in Maryland or whether the increased payment is "simply a general welfare increase that would have occurred even were energy costs not a factor." H.R.Rep. No. 96–788, 96th Cong., 2d Sess. 123, *reprinted in* [1981] U.S.Code Cong. & Ad.News 956.

bly, subject to reversal. Significantly, the USDA's action may be reversed if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, it appears that defendants have a number of defenses to plaintiffs' allegations. In conclusion, plaintiffs have demonstrated some possibility of prevailing on the merits. Given the plaintiffs' strong showing of irreparable harm, the court believes plaintiffs' showing of likelihood of prevailing on the merits is adequate.

### 3. *The Public Interest*

The court believes that the public interest favors granting preliminary relief given the devastating risk to the food stamp recipients' welfare in the instant case. If preliminary injunction relief is denied, these recipients will undoubtedly suffer economically and socially. In addition, denial conceivably could wreak havoc on the State's food stamp program. The public has an interest in the proper construction and implementation of the Food Stamp Act and the protection of those whom the Act was designed to assist. The court believes that denying plaintiffs' request for preliminary injunctive relief and subjecting the State to the risk of sanctions and subjecting food stamp recipients to reduced benefits would not be in the public interest.

Accordingly, for the foregoing reasons, it is this 2nd day of August 1985, by the United States District Court for the District of Maryland,

ORDERED that plaintiffs' Motion for Preliminary Injunction be, and the same hereby is, *Granted,* and that defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them are preliminarily enjoined as follows:

1. Defendants may not, now or in the future, impose any fiscal sanctions or other penalties upon the State plaintiffs, or otherwise reduce any funds for administrative costs which normally would be paid to the State plaintiffs in the usual course of defendants' financial participation in Mary-

land's Food Stamp Program as a result of State plaintiffs' policy to exclude from income when determining eligibility and benefit level in the State's Food Stamp Program the energy assistance grant enacted by the General Assembly of Maryland, effective July 1, 1985, to help public assistance recipients meet their home heating needs from the period beginning August 1, 1985 until this matter is determined on the merits.

2. Defendants may not, now or in the future, require the State plaintiffs to establish and recover as overissuances the dollar value of any food stamps issued as a result of the State plaintiffs' policy to exclude from income when determining eligibility and benefit level in the State's Food Stamp Program the energy assistance grant enacted by the General Assembly of Maryland, effective July 1, 1985, to help public assistance recipients meet their home heating needs from the period beginning August 1, 1985, until this matter is determined on the merits;

(3) Defendants may not, now or in the future, require the State plaintiffs to consider as payment errors under defendants' quality control system the dollar value of any food stamps issued as a result of the State plaintiffs' policy to exclude from income when determining eligibility and benefit level in the State's Food Stamp Program the energy assistance grant enacted by the General Assembly of Maryland, effective July 1, 1985, to help public assistance recipients meet their home heating needs from the period beginning August 1, 1985, until this matter is determined on the merits.

It is further ORDERED that the Clerk of the Court shall mail copies of this memorandum and order to counsel for the parties.